NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1798
_____

ANNIE E. ARRINGTON,
                                        Appellant

v.

NATIONAL RAILROAD PASSENGER CORPORATION
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-15-cv-6750)
District Judge:  Hon. Nitza I. Quiñones Alejandro
_____

Submitted Under Third Circuit LAR 34.1(a)
January 11, 2018

Before:  JORDAN, ROTH, *Circuit Judges* and MARIANI[*], *District Judge.*

(Filed: January 31, 2018)
_____

OPINION[**]
_____

_____

[*] Honorable Robert D. Mariani, United States District Court Judge for the Middle
District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7,
does not constitute binding precedent.

JORDAN, *Circuit Judge*.

Annie Arrington appeals from the grant of summary judgment against her on her claim that the National Railroad Passenger Corporation ("Amtrak") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and her further claim that Amtrak's negligence caused her injuries. We will affirm.

## I.      Background[1]

Arrington was a passenger on an Amtrak train traveling between Pennsylvania and North Carolina when she fell as the train "jerked." (App. at 90.) Arrington identified herself as "mobility impaired" when she purchased her train ticket. (App. at 537.) At that time, she walked with the assistance of a cane because of a pre-existing condition affecting her back. She did not, however, "need the cane continuously, only when [she] was having problems." (App. at 381.)

When Arrington boarded the Amtrak train in Pennsylvania, Amtrak employees directed her to a seat in the handicap-accessible section of the train car because her ticket identified her as requiring an "accessible" seat due to her self-identified mobility impairment. Arrington was carrying her cane when she boarded the train, but she did not use it while walking to her seat.

As it turned out, Amtrak employees directed Arrington and others to a handicap-accessible section in the wrong train car, given that their ultimate destination was in

---

[1] We view the facts in the light most favorable to the nonmoving party. *See infra* note 2.

2

North Carolina. So, while the train was traveling between Wilmington, Delaware and Baltimore, Maryland, an Amtrak conductor told those passengers that they were seated in the wrong car and would have to move to a different one. Arrington informed the conductor that she could not get up and walk to a different car while the train was moving. The conductor replied that Arrington could wait until the train arrived in Baltimore before moving to her new seat because the train would stop in Baltimore for five minutes. Before the train reached Baltimore, though, Arrington observed the passengers seated with her in the handicap-accessible section moving to the other train car without assistance. She decided, as she noticed the train slowing down, to get up and move to her new seat. She did not ask for assistance, and, in fact, declined assistance from a fellow passenger. Arrington testified that the train was stopped when she got out of her seat but that she did not know if the train had arrived in Baltimore, and she did not see any other passengers in the aisle, apart from those waiting in line for the restroom. She said that there was no reason she attempted to move seats before the train reached Baltimore.

Arrington fell as she was walking down the aisle as a result of what she described as a "hard" and "long" jerk. (App. at 332.). After she fell, the Amtrak conductor who had previously told her she could wait until Baltimore to switch seats came over and offered to help Arrington off the floor. Arrington replied that she could not get up right away and remained on the floor for a couple minutes. When Arrington was ready to be helped into a seat, the conductor helped her get off the floor and into a nearby seat and told Arrington to move to the appropriate train car when she was ready. Arrington later

3

walked to her new handicap-accessible seat in the other train car without asking for or receiving assistance.

Prior to this incident, Arrington independently pursued a wide range of everyday activities. She testified, "I did everything I had for myself. I cooked. I went shopping. I did all my own shopping. For a long time I did my own grass [by riding mower], but then I got somebody to start cutting my grass because it got to be too much for me." (App. at 395.) She was also active in religious organizations and did water aerobics at a senior center.

Arrington sued Amtrak for violations of the ADA and for negligence arising out of her fall. The District Court granted summary judgment in favor of Amtrak on those claims, and Arrington appeals that judgment.

## II. Discussion[2]

We agree with the District Court's thorough analysis and conclusion that Arrington failed to establish a prima facie case of discrimination under the ADA and that the record contains no evidence to support Arrington's negligence claim.

---

[2] The District Court had diversity jurisdiction under 28 U.S.C. 1332 and federal question jurisdiction under 28 U.S.C. §§ 1331 and 1349. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a grant of summary judgment is plenary. *Deweese v. Nat'l R.R. Passenger Corp. (Amtrak)*, 590 F.3d 239, 244 n.8 (3d Cir. 2009). Summary judgment is appropriate if there are no genuine disputes of material fact and if the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In reviewing a summary judgment ruling, we consider the facts in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 248-49.

4

**A.    ADA Claim**[3]

"Title II of the ADA prohibits discrimination against the disabled in public services, programs, and activities." *Disability Rights N.J., Inc. v. Comm'r, N.J. Dep't of Human Servs.*, 796 F.3d 293, 301 (3d Cir. 2015).  To succeed on an ADA discrimination claim, a plaintiff must establish that she is a qualified individual with a disability; that she was excluded from participation in or denied the benefits of a public entity's services, or was discriminated against by a public entity; and that such exclusion, denial, or discrimination was by reason of her disability.  42 U.S.C. § 12132; *Disability Rights N.J.*, 796 F.3d at 301.  There is no dispute that Amtrak is a public entity subject to Title II of the ADA.

Arrington argues that she has established she is a qualified individual with a disability because she presented evidence that she has a long history of orthopedic impairments.  The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities …; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"[4]  42 U.S.C. § 12102.

---

[3]  Arrington's complaint appears, on its face, to state only a negligence claim.  It invokes the ADA only in a passing reference to Amtrak's alleged failure to train its employees pursuant to that statute in a sub-paragraph in support of her negligence claim.  Although the civil cover sheet filed with the complaint indicated Arrington intended to bring a claim under the ADA, it invoked the District Court's diversity jurisdiction, not its federal question jurisdiction.  The parties and the District Court, however, liberally construed Arrington's complaint to contain an ADA claim and we will do likewise and review the resolution of that claim.

[4]  Arrington does not argue that her impairment qualifies as a disability under subpart (C), which does not require a plaintiff to prove a substantial limitation on a major life activity.  42 U.S.C. § 12102(3).  We note, however, that even if Arrington could

5

Walking is considered a major life activity. 29 C.F.R. § 1630.2(i)(1)(i). An individual is substantially limited in performing a major life activity if that individual is unable to pursue that major life activity in a comparable manner "to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). We agree with the District Court's conclusion that Arrington does not have a qualifying disability because she has not pointed to any record evidence demonstrating that she was substantially limited in any major life activity, including walking. In fact, she testified that, at the time of the incident, she could do everything on her own.

Arrington further argues that Amtrak discriminated against her when its employees failed to provide assistance when she was moving between train cars. The record evidence demonstrates that Amtrak provided Arrington with the one accommodation she actually requested – a seat in a handicapped section. Amtrak did not deny Arrington assistance to which she was entitled when she got up to move between seats; she never asked for any assistance. An Amtrak conductor specifically told Arrington that she could wait until the train reached the station in Baltimore before moving to her new seat. Amtrak was under no statutory obligation to preemptively offer her assistance on the chance she would get up prior to the train reaching Baltimore. We agree with the District Court that the record contains no evidence that allows for a finding

---

demonstrate that her impairment was a qualifying disability, she would still fail to make out a prima facie claim of discrimination because she cannot demonstrate that Amtrak discriminated against her or denied her any benefits or services to which she was entitled. *See infra* pp. 6-7.

6

that Amtrak discriminated against Arrington or denied her any benefits or services to which she was entitled.

Accordingly, Arrington has not established a prima facie case of discrimination under the ADA.

**B.     Negligence Claim**[5]

To state a claim for negligence under Pennsylvania law, "the plaintiff must show that the defendant had a duty to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003) (quotation marks and citation omitted). Pennsylvania holds common carriers, such as Amtrak, "to the highest duty of care." *LeGrand v. Lincoln Lines, Inc.*, 384 A.2d 955, 956 (Pa. Super. Ct. 1978). When a common carrier "accepts as a passenger a person known to [have] … a physical … disability," a common carrier "must exercise a greater degree of care for that passenger than is ordinarily required." *Id.*

The record does not support that Amtrak breached its duty to conform to a heightened duty of care. As discussed above, an Amtrak conductor told Arrington she

---

[5] As the District Court noted, both parties rely exclusively on Pennsylvania state law when discussing Arrington's negligence claim, despite the fact that Arrington's fall occurred while the train was in Maryland. The Court applied Pennsylvania law after it determined that "the law with respect to the duty owed … a passenger on a common carrier is the same in both Pennsylvania, where [Arrington] boarded the train, and in Maryland, where [Arrington's] injury occurred." (App. at 16 (*comparing Wash. Metro. Area Transit Auth. v. Djan*, 979 A.2d 194, 196 (Md. Ct. Spec. App. 2009) *with Connolly v. Phila. Transp. Co.*, 216 A.2d 60, 62 (Pa. 1966)).) Because we agree with the District Court on that point and because no party objected to the application of Pennsylvania law, we too apply Pennsylvania law.

7

could wait to move until the train reached the station in Baltimore. Instead of waiting until the train reached Baltimore, Arrington attempted to move to her new seat before the train got to Baltimore, without asking for any assistance. The common law, just like the ADA, placed no affirmative duty on Amtrak to predict that Arrington would get up to move to her new seat before the train stopped and to preemptively offer assistance she had not requested.[6] We agree with the District Court that Arrington's negligence claim fails as a matter of law.[7]

## III.    Conclusion

For the foregoing reasons, we will affirm the grant of summary judgment in favor of Amtrak.

---

[6] Arrington appears to argue that Amtrak was negligent because its employees failed to conform to Amtrak's own policies. The policies contained in the record, however, do not require Amtrak employees to predict when a passenger seated in a handicap-accessible seat might need assistance going from one seat to another. Rather, the policies state that "[i]ndividuals with disabilities should notify the ticket agent in advance of any special accommodations needed … on-board the train." (App. at 564.) And, while the policies explicitly state that "[p]assengers may notify the crew at any time that they have a disability and will need special assistance," (App. at 564 (emphasis omitted)), as explained above, Arrington never asked for assistance.

[7] The Court also concluded that Arrington's negligence claim failed by operation of Pennsylvania's "jerk or jolt" doctrine. (App. at 18.) That doctrine precludes a finding of negligence against a common carrier based only on a common carrier's sudden movement unless the plaintiff can demonstrate the sudden movement was particularly unusual and extraordinary. *Connolly*, 216 A.2d at 62. Arrington argues that doctrine does not apply when a common carrier is transporting an individual it knows to be disabled. We do not reach that issue because it is clear to us that Arrington's negligence claim fails as a matter of law regardless of the applicability of the "jerk or jolt" doctrine.

8